EXHIBIT
6
exhibitsticker.com

*Taravella v. Exact Care Pharmacy, LLC, No. 1:25-cv-01692-RP (W.D. Tex.)*

# SUMMARY OF DISCOVERY NOT PRODUCED BY EXACT CARE

## I.
## DISCOVERY NOT PRODUCED

As of November 10, 2026, Exact Care Pharmacy, LLC has not produced or provided the following. Bates citations refer to Exact Care's production, EXACTCARE-TARAVELLA_000001–005584.

1. Daily transfer reports for February 14, 2025, which the Targeted Engagement Services Agreement requires Conversion Finder to deliver to Exact Care (000062).
2. Invoices, billing records, and payment records for warm transfers in February 2025, including any $70 transfer charge for Plaintiff's number (000062, Schedule A).
3. Any recording of the February 14, 2025 call held by Exact Care, Conversion Finder, or the dialing affiliate. Exact Care's production contains only Plaintiff's own recording, twice.
4. Exact Care's internal records of Plaintiff's number (732) 470-8961, including Salesforce, MyPAT, Monet Call ID, call logs, and any completed QA scorecard.
5. The identity of the Conversion Finder "affiliate" that dialed Plaintiff, its contract, and Exact Care's written approval of that subcontractor (000062, § III(e)).
6. Agreements among Conversion Finder, the dialing affiliate, and TopInsuranceDeals.
7. The Insertion Order and the version of the Targeted Engagement Services Agreement in force on February 14, 2025.
8. Communications between Exact Care and Conversion Finder, its affiliate, or the lead generator about Plaintiff, including the August–September 2025 exchanges in which Exact Care obtained the lead record and Verisk report (000035).
9. Exact Care's internal communications about Plaintiff's demand and do-not-call request, including those among Todd Donnelly, Julie Markus, Danielle Bodnar, and Kristen Donnelly (000029).

10. The complete Jornaya/Verisk event log and metadata for every LeadiD associated with Plaintiff, including IP logs, timestamps, referrer URL, user agent, page capture, clickstream, and hash values or tokens.

11. The Visual Playback recording itself, and the records for the two other LeadiDs referenced in the production (C2D18126… and 031CD0FB…).

12. A capture of the web page on which consent was allegedly given, including the source URL, the consent language as displayed, the hyperlinks, and the completed form fields.

13. Lead-transmission records: purchase orders, lead delivery reports, API transmission logs, batch upload logs, and data-field mapping.

14. Call-routing records for (732) 965-5111, including SIP logs, trunk routing, originating-carrier records, and caller-ID transmission records.

15. The make, model, and provider of the dialing system and platform used to call Plaintiff.

16. Every version of Exact Care's outreach and TCPA compliance policies in force from February 2024 through suit, including version 1.0 (effective February 4, 2025) and version 2.0 (effective August 12, 2025), a timeline of when each was in force, and the referenced Patient Scheduling Quality Assurance policy.

17. Do-not-call training records and signed SOP acknowledgments, together with National Do-Not-Call Registry scrub records and dates for Plaintiff's number.

18. Documents concerning any vendor's failure to follow Exact Care's policies, and all complaints and do-not-call requests, for the 12 months before suit.

19. Insurance policies and insurer communications, including reservation-of-rights letters.

20. Indemnity demands, tenders, and responses between Exact Care and Conversion Finder or any other party.

21. The Texas registration certificate under TEX. BUS. & COM. CODE § 302.101, or a sworn statement that none exists.

22. Non-privileged communications with third parties about this lawsuit, and a privilege log for everything withheld.

23. Responsive documents held by Exact Care's affiliates and contracting parties, including ECP Holdings, LLC, CarepathRx Holdings, LLC, AnewHealth, and Tabula Rasa HealthCare, Inc., through whose email and signature systems Exact Care verified its interrogatory answers.

24. Re-production of all ESI in native format with metadata, labeled to the requests to which it responds.

25. Identification of the custodians, systems, search terms, and date ranges Exact Care used.

26. Complete answers to Interrogatory Nos. 1–8, 11, 12, and 14–17, without reference to pleadings, with a verification that covers the amended answers.

## II.
## REQUEST-BY-REQUEST TABLE

| No. | Request (Summary) | Relevance | What Was Provided |
|---|---|---|---|
| **GENERAL DEFICIENCIES** | | | |
| General | Verification of interrogatory answers. | Answers must be made under oath by the party. FED. R. CIV. P. 33(b)(3), (b)(5). | Meghan C. Bublitz verified "the foregoing Responses and Objections" on August 12, 2026, six days before the amended answers were dated and served. Whether the verification covers the amended answers is unclear. |
| General | Form of production: native files with metadata, labeled to the requests. | Metadata is the evidence in a fabrication case. | TIFF images without metadata, with only three native files. Nothing labeled to any request. |
| General | Privilege log. | Privilege is asserted in response to 20 requests. FED. R. CIV. P. 26(b)(5)(A). | None served. |
| General | Search parameters (custodians, systems, search terms, date ranges). | Plaintiff cannot test the adequacy of a search Exact Care has never described. | Never disclosed. |
| General | Production volume. | Measures how much substantive material was actually produced. | 5,584 pages, of which 5,477 (000103–005579) are a single blank QA scorecard repeated by a formatting error. About 107 pages are substantive. |
| **INTERROGATORIES** | | | |
| Interrogatory No. 1 | Identify all persons with knowledge of relevant facts and the subjects of their knowledge, with contact information. | Identifies the witnesses to the lead, the February 14, 2025 call, the alleged transfer, and the post-demand investigation. Plaintiff needs them for depositions and subpoenas. | Four names (Meghan Bublitz, Gary Davis, Melissa Mantkowski, and "Conversion Finder") with no employer, title, address, telephone, or email. The answer The August 18 amended answer adds Todd Donnelly and directs contact through counsel. It still omits "Mary Grace," Conversion Finder personnel, the dialing "affiliate," TopInsuranceDeals, and Verisk. |
| Interrogatory No. 2 | Identify any other person or entity Exact Care contends is liable, with supporting facts. | Shows whether Exact Care will blame its vendor at trial. It also bears on vicarious liability and on the indemnity provisions in the vendor contract (000062, § IX(g)). | A denial of liability "given that consent . . . was provided." No entity identified. |
| Interrogatory No. 3 | Identify the employees and vendors in the calling campaign, including (a) third-party callers, (b) the dialing platform, and (c) the | Maps the lead chain and the on-whose-behalf question under 47 C.F.R. § 64.1200(c)(2). The dialing platform and | July 29: "Conversion Finder" contacted Plaintiff. August 18 amended: "one of Conversion Finder's affiliates" did, unnamed. |

| No. | Request (Summary) | Relevance | What Was Provided |
|---|---|---|---|
| | source of the numbers. | number source go to the fabrication and spoofing theories. | Subparts (a), (b), and (c) are unanswered. |
| Interrogatory No. 4 | If Exact Care contends Plaintiff consented, state the facts, date, means, website, language displayed, and record holder. | Consent is Exact Care's principal affirmative defense. Plaintiff alleges the consent record was generated after the call was initiated. | A reference to its Answer, Paragraph 21, and that pleading's three exhibits (the Verisk report, the lead CSV, and Plaintiff's own letter). No source URL, no captured web page, and no record holder identified. |
| Interrogatory No. 5 | If a third party made the calls, identify it and state the supporting facts. | Establishes who dialed and whether the call reached Exact Care. This is the precise fact Exact Care now cites to justify a thin production. | An unnamed Conversion Finder "affiliate." The answer asserts the call "ended before being transferred to Exact Care" but cites no record. |
| Interrogatory No. 6 | Identify all communications with third parties, other than counsel, about this lawsuit. | Reaches vendor communications on consent, indemnity, and the September 2025 retrieval of the lead record. | A Rule 33(d) referral to documents to be produced "subject to the Preamble on a rolling basis." No records identified. No privilege log. |
| Interrogatory No. 7 | Identify by make, model, structure, and location the systems used by Exact Care or any vendor to contact Plaintiff. | Goes to dialing technology, caller-ID transmission, and the vendor-attribution and number-spoofing theories. | July 29: an offer to meet and confer about the vendor. August 18 amended: the information "is not in Exact Care's possession, custody, or control," although its vendor contract makes vendor records available on request (000062). No answer. |
| Interrogatory No. 8 | State the material facts supporting each affirmative defense. | Plaintiff is entitled to know the factual basis of each defense before dispositive motions. | A reference to the Complaint, the Answer, and the Answer's exhibits. |
| Interrogatory No. 9 | Identify persons disciplined for unlawful or unauthorized calls in the 12 months before suit. | Goes to compliance enforcement and willfulness. | States no one was disciplined. |
| Interrogatory No. 10 | State Exact Care's current net worth. | [Confirm relevance or omit from motion.] | Objection only. No answer. |
| Interrogatory No. 11 | Describe the do-not-call compliance policies, training dates, and training logs for the 12 months before suit. | The safe harbor of 47 C.F.R. § 64.1200(c)(2)(i) requires written procedures, training, and records. This goes to willfulness and treble damages. | A Rule 33(d) referral "subject to the Preamble." Only current-version policies were produced. |
| Interrogatory No. 12 | Identify the dates Exact Care checked Plaintiff's number against the National Do-Not-Call Registry and who did so. | Goes directly to the do-not-call claim and the safe-harbor defense. | A reference to Answer, Paragraph 21, which says nothing about registry scrubbing. |
| Interrogatory No. 13 | Identify the person who secured the registration certificate under TEX. BUS. & COM. CODE § 302.101. | Goes to the Texas Business & Commerce Code claim. | "Gary Davis." The August 18 amended answer adds an objection that the statute was not effective at the time of the call. No certificate was produced (see Request No. |

| No. | Request (Summary) | Relevance | What Was Provided |
|---|---|---|---|
| | | | 16). |
| Interrogatory No. 14 | Identify every vendor that handled Plaintiff's number or alleged consent, with dates and transfer methods. | Reconstructs the chain of custody of the lead record, which is the heart of the fabrication theory. | A reference to Answer, Paragraph 21, and Interrogatory No. 3. |
| Interrogatory No. 15 | Identify the records Exact Care contends evidence consent, with creation date and creator. | Fixes which records Exact Care relies on and when they were created relative to the call. | A Rule 33(d) referral "subject to the Preamble," plus (August 18) a reference to Answer, Paragraph 21. No records identified. |
| Interrogatory No. 16 | Describe Exact Care's supervision and compliance oversight of third parties calling on its behalf. | Goes to vicarious liability, ratification, and willfulness. | A Rule 33(d) referral "subject to the Preamble." No records identified. |
| Interrogatory No. 17 | Identify how, when, from whom, and why Exact Care obtained Plaintiff's number. | Goes to the source of the number and the lead chain. | A reference to Answer, Paragraph 21, and Interrogatory No. 3. |
| **REQUESTS FOR PRODUCTION** | | | |
| Request No. 1 | Documents identified in or used to answer the interrogatories. | Tests the basis of every interrogatory answer. | Conditioned on the ESI protocol and protective order. No documents tied to any answer. |
| Request No. 2 | Documents supporting or contradicting any affirmative defense. | Tests the consent, safe-harbor, and reassigned-number defenses. | Conditioned on the ESI protocol and protective order. Nothing identified beyond the Answer's exhibits. |
| Request No. 3 | All documents relating to Plaintiff, including Exact Care's investigation of the calls. | Covers the call, the alleged transfer, Exact Care's records of Plaintiff's number, and Mr. Donnelly's August–September 2025 investigation. | Conditioned on the ESI protocol and protective order. Produced: the Verisk report (000001), the lead CSV (000016), Plaintiff's own emails and demand letters, and Plaintiff's own recording, twice (000005, 000022). No investigation file, call log, Salesforce record, or Exact Care recording. |
| Request No. 4 | Documents about any vendor's failure to follow Exact Care's policies or agreements, 12 months before suit. | Notice of vendor misconduct goes to vicarious liability, ratification, and willfulness. | Conditioned on the ESI protocol and protective order. Nothing produced. |
| Request No. 5 | Complaints and do-not-call requests about calls by Exact Care or its vendors, 12 months before suit. | Pattern and notice evidence for willfulness and treble damages. | Conditioned on the ESI protocol and protective order, and limited to "internal" documents. Nothing produced. |
| Request No. 6 | Contracts with any vendor that supplied Plaintiff's number or information. | Defines the agency relationship and Exact Care's contractual control over vendor records. | Conditioned on the ESI protocol and protective order. Produced: Mutual Confidentiality Agreement (000060), Business Associate Agreement (000052), and Targeted Engagement Services Agreement (000062). Missing: the Insertion Order and agreement version in force on February 14, |

| No. | Request (Summary) | Relevance | What Was Provided |
|---|---|---|---|
| | | | 2025. |
| Request No. 7 | Internal communications about the vendor that supplied Plaintiff's number. | Shows what Exact Care knew about Conversion Finder's practices. | Conditioned on the ESI protocol and protective order and on a "narrowing." Nothing produced. |
| Request No. 8 | Contracts with any third party that dialed Plaintiff. | Identifies the dialing "affiliate" and the terms under which it called. | Conditioned on the ESI protocol and protective order. No agreement with, or written approval of, the affiliate was produced. |
| Request No. 9 | Communications with any third party that dialed Plaintiff. | Includes the exchanges in which Exact Care obtained the lead record and Verisk report in early September 2025. | Conditioned on the ESI protocol and protective order and on a "narrowing." Nothing produced. |
| Request No. 10 | Internal communications about any third party that dialed Plaintiff. | Includes the internal emails among Mr. Donnelly, Julie Markus, Danielle Bodnar, and Kristen Donnelly after August 29, 2025 (000029). | Conditioned on the ESI protocol and protective order. Nothing produced. |
| Request No. 11 | Do-not-call training logs, 12 months before suit. | Safe-harbor element under 47 C.F.R. § 64.1200(c)(2)(i)(B). | "No documents." Exact Care's own SOP requires signed training acknowledgments (005580, § 4.13.5). |
| Request No. 12 | Insurance policies and insurer communications, including reservation-of-rights letters. | Required initial disclosure under Rule 26(a)(1)(A)(iv). Bears on settlement and recovery. | Conditioned on the ESI protocol and protective order. Nothing produced. |
| Request No. 13 | Indemnification agreements and communications with indemnitors. | Identifies who bears a judgment and whether Exact Care has tendered to its vendor. | Conditioned on the ESI protocol and protective order. Only the indemnity clause in 000062. No demand, tender, or response. |
| Request No. 14 | TCPA compliance policies and a timeline of when each was in force. | Shows which policies governed on February 14, 2025. Goes to the safe harbor and willfulness. | Conditioned on the ESI protocol and protective order. Current versions only (000006, version 3.0, May 2026; 000072; 005580, effective October 24, 2025; 000012; 000017). Missing: version 1.0 (February 4, 2025), version 2.0 (August 12, 2025), the timeline, and the referenced Patient Scheduling QA policy. |
| Request No. 15 | Communications with third parties about this litigation. | Vendor, lead-generator, and insurer communications about the claim. | Conditioned on the ESI protocol and protective order. Only Exact Care's emails with Plaintiff. No privilege log. |
| Request No. 16 | The TEX. BUS. & COM. CODE § 302.101 registration certificate. | Element of the Chapter 302 claim. | Refused on a merits argument. Nothing produced, and no statement that none exists. |
| Request No. 17 | All LeadiD, TrustedForm, Jornaya, or similar lead-certification records for | The core of the fabrication theory. Timestamps and event logs show whether | Conditioned on the ESI protocol and protective order. Only the Guardian TCPA |

| No. | Request (Summary) | Relevance | What Was Provided |
|---|---|---|---|
| | Plaintiff, with event logs and metadata. | the consent record predates the call. | summary report and a Visual Playback link (000001, 000039). |
| Request No. 18 | The complete event log and metadata for that certification: IP logs, timestamps, referrer URL, user agent, page capture, clickstream, and hash values or tokens. | The forensic data Dr. Rosenberg needs to test geolocation, typing cadence, and timing. | Conditioned on the ESI protocol and protective order. Nothing produced for subparts (b) through (g). |
| Request No. 19 | A complete capture of each web page on which Plaintiff allegedly consented, including disclosures, consent language, hyperlinks, and form fields. | Shows whether any consent named Exact Care, as its own contract requires (000062, § II(a)). | Conditioned on the ESI protocol and protective order. Only the disclosure text inside the Verisk report. No URL, page image, or form-field capture. |
| Request No. 20 | Records of the transmission or sale of Plaintiff's lead to Exact Care: purchase orders, invoices, delivery reports, API logs, batch logs, and field mapping. | The daily transfer reports and $70-per-transfer invoices required by the contract will prove or disprove whether the call was transferred to Exact Care. | Conditioned on the ESI protocol and protective order. Nothing produced. |
| Request No. 21 | Call-routing records: SIP logs, trunk routing, originating carrier, and caller-ID transmission records. | Goes to the number-spoofing and vendor-attribution theories for (732) 965-5111. | Conditioned on the ESI protocol and protective order. Nothing produced. |