EXHIBIT 7

exhibitsticker.com

Stephen D. Casey
VERDICT LAW, PLLC
1604 Rio Grande Street
Austin, Texas 78701

Ph: (512) 887-1900
Fax: (512) 887-1901
stephen@verdictlaw.law

November 10, 2026

***Via E-Mail: slamka@calfee.com; coneil@calfee.com***
Samantha Lamka
Colleen O'Neil
CALFEE, HALTER & GRISWOLD
1405 East Sixth Street
Cleveland, Ohio 44114-1604

RE: Case No. 1:25-cv-01692-RP, *Brian Taravella v. Exact Care Pharmacy, LLC*, in the Western District of Texas, Austin Division; Discovery Extension and Rule 26 edits

Dear Counsel,

Responsive to your email this morning, I plan to file this week; however, the timeline shifted, as explained below. And thank you for your email yesterday, and for offering to check with your client and supplement. We appreciate it.

We went back through the production, though, and we don't think a supplement alone gets us there. So we'd like to confer under Local Rule CV-7(g), hence this longer letter.

Here's the concern: of the 5,584 pages produced, 5,477 are the same blank QA scorecard (meaning around 98% of production is the same blank page). That leaves about only 107 pages of substance. Respectfully, we can't agree that the production is thin because Mr. Taravella "was never transferred."

Whether he was transferred is one of the very facts we're disputing. Right now the only support for it is Exact Care's answer to Interrogatory No. 5, which isn't verified. The documents that would settle it are the daily transfer reports, the transfer invoices, and the call records. Exact Care's own contract with Conversion Finder requires those records to be kept and delivered to Exact Care. Those are part of the documents we asked for, and we haven't received them.

On the ESI protocol: Exact Care's responses made 19 of its 21 document responses, and four interrogatory answers, conditional on an ESI protocol and protective order. Your July 20 letter described that as "standard practice" required "prior to the production of documents." We sent our redline of the ESI order on August 31 and didn't hear back until I followed up. But that leaves massive discovery outstanding on a hurdle Exact Care set up and but never provided.

We've attached a summary of what remains outstanding. If we can work this out, great. If not, we plan to move under Rule 16(b)(4) to modify the Scheduling

Order to reopen discovery to correct the course. It would likely be a move of discovery until 1/15/27 and dispositive motions until 2/15/27.

Could you let us know by Friday, November 13, at 5:00 p.m. Central whether Exact Care would oppose the motion? We'd be glad to work out an agreed order instead, and are available for a call Thursday or Friday. Thanks. If we don't hear back by then, we'll note the motion as opposed, and take no offense either way.

To keep the record clear, nothing here narrows Plaintiff's requests or waives the positions we've previously reserved on timeliness, waiver, and Rule 37.

Thank you for your consideration.

Respectfully,

Stephen D. Casey
VERDICT LAW, PLLC
Attorney at Law

Cc: Client, *via email*
Gregg Brown (grb-svc@germer-austin.com)
Ben Martin (bmartin@germer-austin.com)

*Encl/1*

## SUMMARY OF DISCOVERY OUTSTANDING FROM EXACT CARE

To help with your client's supplement, here is what we have not yet received in response to Plaintiff's First Set of Discovery Requests. We have tied each item to the requests it answers. Bates numbers refer to Exact Care's production, EXACTCARE-TARAVELLA_000001–005584.

1. **The transfer.** We have not received the daily transfer reports for February 14, 2025, the warm-transfer invoices and billing records for February 2025, or any recording of the call kept by Exact Care, Conversion Finder, or the affiliate that dialed, or the video record of the alleged consent information entry. (Request Nos. 3, 20; Interrogatory No. 5.)

2. **Exact Care's records of Mr. Taravella's number.** We have not received Exact Care's own entries for (732) 470-8961, including Salesforce, MyPAT, Monet Call ID, call logs, and any completed QA scorecard. (Request No. 3.)

3. **The lead certification.** We received the Verisk summary report and a Visual Playback link. We have not received the playback itself, the complete Jornaya/Verisk event log and metadata for each LeadiD tied to Mr. Taravella, or the records for the two other LeadiDs referenced in the production. (Request Nos. 17, 18; Interrogatory No. 15.)

4. **The consent page.** We have not received the source URL or a capture of the web page, including the consent language as it appeared, its hyperlinks, and the completed form fields. (Request No. 19; Interrogatory No. 4.)

5. **Lead transmission.** We have not received the purchase orders, lead delivery reports, API and batch upload logs, or data-field mapping showing how the lead reached Exact Care. (Request No. 20; Interrogatory Nos. 14, 17.)

6. **Call routing.** We have not received the SIP, trunk, originating-carrier, or caller-ID records for (732) 965-5111, or the name of the dialing system and platform. (Request No. 21; Interrogatory Nos. 3, 7.)

7. **The vendor chain.** We received three agreements with Conversion Finder. We have not received the name of the affiliate that dialed, its agreement, Exact Care's written approval of it under the Targeted Engagement Services Agreement (000062, § III(e)), any agreement with TopInsuranceDeals, or the Insertion Order and contract version in force on February 14, 2025. (Request Nos. 6, 8; Interrogatory Nos. 3, 5.)

8. **Communications.** We have not received Exact Care's communications with Conversion Finder, its affiliate, or the lead generator about Mr. Taravella, including the August–September 2025 exchange that produced the lead record (000035). We also have not received the internal emails about his demand and do-not-call request (000029), or non-privileged third-party communications about this suit. (Request Nos. 7, 9, 10, 15; Interrogatory No. 6.)

9. **Policies and training.** We received the current versions of the policies. We have not received the earlier versions in force from February 2024 through suit, including versions 1.0 and 2.0, a timeline of when each applied, the Patient Scheduling QA policy the outreach policy references, the do-not-call training records and SOP acknowledgments, or the registry scrub records for Mr. Taravella's number. (Request Nos. 11, 14; Interrogatory Nos. 11, 12, 16.)

10. **Complaints and vendor compliance.** We have not received complaints, do-not-call requests, or records of vendor-compliance failures for the twelve months before suit. (Request Nos. 4, 5.)

11. **Insurance, indemnity, and registration.** We have not received the insurance policies and any reservation-of-rights letters, any indemnity demand or tender, or the Texas registration certificate under Tex. Bus. & Com. Code § 302.101. If no certificate exists, a statement saying so will do. (Request Nos. 12, 13, 16; Interrogatory No. 13.)

12. **Affiliates.** The agreements were signed by ECP Holdings, LLC and CarepathRx Holdings, LLC, and the company now operates as AnewHealth. We ask that the supplement include responsive documents those entities hold. (All Requests for Production.)

13. **Form of production.** We asked for native files with metadata, and the production came as TIFF images without metadata or labels tied to the requests. Pages 000103–005579 are one blank QA scorecard repeated. We ask for native re-production labeled to the requests, a privilege log, and the custodians, systems, and search terms used.

14. **Interrogatory answers.** Interrogatory Nos. 1–8, 11, 12, and 14–17 still need complete answers that do not refer back to the pleadings, verified by an officer or agent of Exact Care.